DAVIS WRIGHT TREMAINE LLP
MARTIN L. FINEMAN, Bar No. 1104413
505 Montgomery Street
Suite 808
San Francisco, CA 94111
Telephone: (415) 276-6575
Facsimile: (415) 276-6599
Email: martinfineman@dwt.com

NIRO, HALLER & NIRO
Raymond P. Niro (Member of the N.D. Cal. Bar)
Christopher J. Lee (*Pro Hac Vice*)
Kara L. Szpondowski (*Pro Hac Vice*)
Anna B. Folgers (*Pro Hac Vice*)
Gabriel I. Opatken (*Pro Hac Vice*)
181 West Madison, Suite 4600
Chicago, IL 60602-4515
Phone: (312) 236-0733
Fax: (312) 236-3137
E-mail: rniro@nshn.com
E-mail: clee@nshn.com
E-mail: szpondowski@nshn.cm
E-mail: afolgers@nshn.com
E-mail: gopatken@nshn.com

Attorneys for Plaintiff
Grail Semiconductor, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| GRAIL SEMICONDUCTOR, INC., <br><br> Plaintiff, <br><br> v. <br><br> RENESAS ELECTRONICS AMERICA, INC., <br><br> Defendant. | Case No. C 11-03847-JCS <br><br> Magistrate-Judge Joseph C. Spero <br><br> **PLAINTIFF GRAIL SEMICONDUCTOR INC.'S OPPOSITION TO RENESAS ELECTRONICS AMERICA INC.'S MOTION TO DISMISS THIS CASE FOR LACK OF SUBJECT MATTER JURISDICTION** |

# TABLE OF CONTENTS

**Page**

I.    GRAIL IS THE OWNER OF THE '552 PATENT AND HAS STANDING TO
      BRING SUIT ........................................................................................................ 2

II.   RENESAS HAS NO EVIDENCE OF A PREVIOUS WRITTEN ASSIGNMENT
      OF THE '552 PATENT THAT WOULD MAKE STERN'S ASSIGNMENT TO
      GRAIL INEFFECTIVE .......................................................................................... 3

      A.    The Powergate Agreement Is Only An Agreement To Assign, Not An
            Assignment Itself ....................................................................................... 4

      B.    Stern's And Speizer's Post-Agreement Statements Are Irrelevant......................... 7

III.  THE POWERGATE AGREEMENT IS VOID THROUGH MUTUAL NON-
      PERFORMANCE AND NOT BINDING ON STERN OR POWERGATE ................... 8

IV.   GRAIL IS A *BONA FIDE* PURCHASER FROM STERN............................................. 11

V.    THIS IS NOT UNLIKE A SALE OF REAL PROPERTY THAT NEVER
      OCCURRED.......................................................................................................... 13

VI.   CONCLUSION..................................................................................................... 14

PLAINTIFF GRAIL SEMICONDUCTOR INC.'S OPPOSITION TO RENESAS ELECTRONICS AMERICA INC.'S MOTION TO
DISMISS THIS CASE FOR LACK OF SUBJECT MATTER JURISDICTION – CASE NO. C 11-03847-JCS

i

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

Abraxis Bioscience, Inc. v. Navinta LLC,
 625 F.3d 1359 (Fed. Cir. 2010)..................................................................................4, 6

Arachnid, Inc. v. Merit Indus., Inc.,
 939 F.2d 1574 (Fed. Cir. 1991)........................................................................................7

Bd. of Trustees of the Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.,
 583 F.3d 832 (Fed. Cir. 2009), aff'd, 131 S. Ct. 2188 (2011)....................................4

Countrywide Home Loans, Inc. v. United States,
 2007 WL 87827 (E.D. Cal. Jan. 9, 2007) ...............................................................14

DDB Techs., L.L.C. v. MLB Advanced Media, L.P.,
 517 F.3d 1284 (Fed. Cir. 2008)..............................................................................4, 5, 7

Ellison Educ. Equip., Inc. v. Chen,
 2004 WL 3154592 (C.D. Cal. Dec. 21, 2004) ............................................................7

Enzo APA & Son, Inc. v. Geapag A.G.,
 134 F.3d 1090 (Fed. Cir. 1998)........................................................................................2

FilmTec Corp. v. Allied-Signal Inc.,
 939 F.3d 1568 (Fed. Cir. 1991)........................................................................5, 7, 12, 13

Freedom Wireless, Inc. v. Boston Commc'ns Group, Inc.,
 220 F. Supp. 2d 16 (D. Mass. 2002) ...........................................................................7

Gaia Techs., Inc. v. Reconversion Techs., Inc.,
 93 F.3d 774, as amended 104 F.3d 1296 (Fed. Cir. 1996)......................................7

In re Gonzalez,
 456 B.R. 429 (C.D. Cal. 2011) ...................................................................................13

In re Hathaway Ranch P'ship,
 127 B.R. 859 (C.D. Cal. 1990) ...................................................................................13

IpVenture, Inc. v. Prostar Computer, Inc.,
 503 F.3d 1324 (Fed. Cir. 2007)...............................................................................4, 6

JLG Enters., Inc. v. Excalibur Sires, Inc.,
 2011 WL 1103325 (E.D. Cal. Mar. 22, 2011) ...........................................................9

PLAINTIFF GRAIL SEMICONDUCTOR INC.'S OPPOSITION TO RENESAS ELECTRONICS AMERICA INC.'S MOTION TO
DISMISS THIS CASE FOR LACK OF SUBJECT MATTER JURISDICTION – CASE NO. C 11-03847-JCS

ii

Pandrol USA, LP v. Airboss Ry. Products, Inc.,
    320 F.3d 1354 (Fed. Cir. 2003)............................................................................2

Perry v. O'Donnell,
    749 F.2d 1346 (9th Cir. 1984) ...........................................................................14

Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp.,
    284 F.3d 1323 (Fed. Cir. 2002).............................................................11, 12, 13

Saints v. Winter,
    2007 WL 2481514 (S.D. Cal. Aug. 29, 2007) ......................................................8

SiRF Technology, Inc. v. Int'l Trade Comm'n,
    601 F.3d 1319 (Fed. Cir. 2010)...........................................................2, 3, 4, 7

Speedplay, Inc. v. Bebop, Inc.,
    211 F.3d 1245 (Fed. Cir. 2000).............................................................................5

Teets v. Chromalloy Gas Turbine Corp.,
    83 F.3d 403 (Fed. Cir. 1996)................................................................................3

Time Warner Entm't-Advance/Newhouse P'ship v. Steadfast Orchard Park, L.P.,
    2008 WL 4350054 (C.D. Cal. Sept. 23, 2008) ...................................................14

WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.,
    655 F.3d 1039 (9th Cir. 2011) ..............................................................................8

STATE CASES

Kittle Mfg. Co. v. Davis,
    47 P.2d 1089 (Cal. Dist. Ct. App. 1935)..............................................................9

Lewis v. Superior Court,
    37 Cal. Rptr. 2d 63 (Cal. App. Ct. 1994) ...........................................................14

FEDERAL STATUTES

35 U.S.C. § 261...........................................................................................4, 12

OTHER AUTHORITIES AND SOURCES

Restatement (Second) of Contracts................................................................9

The Contracts (General Part) Law, 1973, S.H. 118 .......................................8

The Contracts (Remedies for Breach of Contract) Law, 1973, S.H. 16 ........9

PLAINTIFF GRAIL SEMICONDUCTOR INC.'S OPPOSITION TO RENESAS ELECTRONICS AMERICA INC.'S MOTION TO
DISMISS THIS CASE FOR LACK OF SUBJECT MATTER JURISDICTION – CASE NO. C 11-03847-JCS

iii

The motion to dismiss by Defendant Renesas Electronics America, Inc. ("Renesas") fails as a matter of substantive patent law, which the Federal Circuit has held must be applied to disputes of this kind.  The fatal legal deficiency in Renesas's motion cannot be cured by the host of alleged "facts" set forth in the motion, or any additional discovery that Renesas may now try to seek to revive the arguments made in its opening papers.

Renesas claims Grail Semiconductor, Inc. ("Grail") lacks standing because of a 1997 agreement between Don Stern ("Stern"), Robert Stern ("Shneor") and Axon Technology Ltd. ("Axon") (the "Powergate Agreement").  Renesas claims that, in this agreement, Stern purportedly assigned away his rights to U.S. Patent No. 6,642,552 ("the '552 patent") – a patent that wasn't even filed until four years later, in 2001.  But neither Axon nor Stern (both signatories to the Powergate Agreement) fully performed their respective obligations under the terms of the agreement.  For example, no registered capital was obtained; no payment for shares was made; no Board of Directors was created; no directors were appointed; no shares were issued to Stern; and no employment agreements were prepared or signed.  As a result, Stern did not execute any written assignment transferring any patent rights to Powergate.  The agreement was a nullity.

Most importantly, even if the parties to the Powergate Agreement had fully performed all of their obligations under the agreement (which is far from the case), the Powergate Agreement is, at best, an agreement to assign rights to a not-yet-formed corporation in the future.  That assignment, which must be in writing, has never been executed.  This is no different than a signed real estate contract to buy a house that never closed for any number of reasons.  The mere fact that two parties entered into a contract to buy and sell a house, without actually closing the transaction, does not transfer title of the house.

In contrast, Defendant's own Exhibit 12 shows the written assignment of the '552 patent from Stern to Grail.  This conclusively establishes that Grail has standing to sue, because it can

PLAINTIFF GRAIL SEMICONDUCTOR INC.'S OPPOSITION TO RENESAS ELECTRONICS AMERICA INC.'S MOTION TO DISMISS THIS CASE FOR LACK OF SUBJECT MATTER JURISDICTION – CASE NO. C 11-03847-JCS

1

establish ownership through a written assignment that was recorded in the United States Patent and Trademark Office ("PTO").  No other written assignment has been proffered by Renesas.  And patents, by law, can only be assigned in writing.  Because Grail has standing, Renesas's motion must be denied.

## I.   GRAIL IS THE OWNER OF THE '552 PATENT AND HAS STANDING TO BRING SUIT

"Establishing ownership of a patent that has been infringed satisfies the requirements of Article III standing."  Pandrol USA, LP v. Airboss Ry. Products, Inc., 320 F.3d 1354, 1368 (Fed. Cir. 2003).  Grail can satisfy this burden by showing that the inventor of the '552 patent assigned his or its ownership rights to Grail.  See SiRF Technology, Inc. v. Int'l Trade Comm'n, 601 F.3d 1319, 1327-28 (Fed. Cir. 2010); Enzo APA & Son, Inc. v. Geapag A.G., 134 F.3d 1090, 1093 (Fed. Cir. 1998) ("[A] suit for infringement must ordinarily be brought by a party holding legal title to the patent. ... Accordingly, an assignee is the patentee and has standing to bring suit for infringement in its own name.").  Once this is shown, the burden falls on Renesas to show that such an assignment was not effective.  See SiRF Tech., 601 F.3d at 1327-28.  In SiRF Tech., although the plaintiff had offered proof of the assignment of the patent from the inventors, the question was whether the plaintiff "also had the burden of establishing that an interest in the patent had not been previously assigned by [an inventor] to [a third-party]."  Id. at 1327.  The Federal Circuit found that it did not because, as in this case, the assignment was recorded with the PTO:

> The recording of an assignment with the PTO is not a determination as to the validity of the assignment.  However, we think that it creates a presumption of validity as to the assignment and places the burden to rebut such a showing on one challenging the assignment.

Id. at 1327-28 (internal citation omitted).

PLAINTIFF GRAIL SEMICONDUCTOR INC.'S OPPOSITION TO RENESAS ELECTRONICS AMERICA INC.'S MOTION TO DISMISS THIS CASE FOR LACK OF SUBJECT MATTER JURISDICTION – CASE NO. C 11-03847-JCS

2

On February 2, 2001, Donald Stern filed U.S. Application No. 09/776,003, which thereafter issued as the '552 patent on November 4, 2003. (Def's. Ex. 12 at REA000860). As the sole named inventor of the '552 patent, Stern was the owner of all rights to the '552 patent. See, e.g., SiRF Tech., 601 F.3d at 1327 n.5; Teets v. Chromalloy Gas Turbine Corp., 83 F.3d 403, 407 (Fed. Cir. 1996). Stern then assigned the '552 patent to Grail, and the assignment was duly recorded in the PTO. (Def's. Ex. 2 at REA000002-00003, ¶¶ 8, 11; Def's. Ex. 11 at REA000847-000850; Def's. Ex. 12 at REA000860-000863; see also Dkt. No. 47, Def's. Mot. to Dismiss at 12-14 (admitting that Stern sold and assigned all his rights in the semiconductor memory technology to Grail and that Grail recorded this assignment in the PTO)). Accordingly, the assignment of the '552 patent from Stern to Grail is presumed to be valid, standing is established, and the burden of challenging the assignment and resulting standing shifts to Renesas. Renesas has not met and indeed cannot meet its burden in view of the absence of any other written assignment transferring title to the '552 patent. The motion should be denied for this reason alone.

## II.    RENESAS HAS NO EVIDENCE OF A PREVIOUS WRITTEN ASSIGNMENT OF THE '552 PATENT THAT WOULD MAKE STERN'S ASSIGNMENT TO GRAIL INEFFECTIVE

The lynchpin of Renesas's argument is that "Donald Stern could not assign the rights to the semiconductor technology to Grail because he had already assigned the rights to that technology to Powergate under the Powergate Agreement." (Def's. Mot. to Dismiss at 12). Not true. The only purported prior transfer of rights in the '552 patent that supposedly deprives Grail of standing to bring this suit is the Powergate Agreement itself. But it assigns nothing; it only *promises* to assign, which the Federal Circuit has repeatedly held is insufficient to assign patent rights.

Renesas's motion to dismiss rises and falls with the Powergate Agreement. But, there is no dispute that the Powergate Agreement is only an agreement to transfer patent rights in the

3

future to an as-of-then nonexistent entity along with a host of other obligations by both parties. In addition, there is no dispute that Renesas has offered no written assignment other than the Stern-to-Grail assignment.   Thus, Renesas's motion must fail as a matter of law.   That is especially the case because the question of whether contractual language effects a present assignment of patent rights, or an agreement to assign rights in the future, is resolved by the law of the Federal Circuit, not regional circuit law and certainly not Israeli law (as Renesas suggests). DDB Techs., L.L.C. v. MLB Advanced Media, L.P., 517 F.3d 1284, 1290 (Fed. Cir. 2008).

### A.   The Powergate Agreement Is Only An Agreement To Assign, Not An Assignment Itself

The Federal Circuit has recognized a distinction between an *automatic* assignment of rights and an *agreement to* assign rights.   Language such as "does hereby grant" and "hereby assigns" evidences the former; language such as "agree to assign" and "will be assigned" evidences the latter.   See, e.g., IpVenture, Inc. v. Prostar Computer, Inc., 503 F.3d 1324, 1327 (Fed. Cir. 2007).   Where only an agreement to assign patent rights exists, further action is required to transfer patent rights, namely an actual assignment implemented in a written document.   Id.; Abraxis Bioscience, Inc. v. Navinta LLC, 625 F.3d 1359, 1365 (Fed. Cir. 2010); see also 35 U.S.C. § 261 ("Applications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing.").   Whether an agreement provides for automatic assignment, or is merely an agreement to assign, is a matter of federal law.   SiRF Tech., 601 F.3d at 1326 (citing DDB Techs., 517 F.3d at 1290).

While it is possible for an inventor to assign any and all of his rights to future inventions, the Federal Circuit has consistently required that present assignments of future rights expressly undertake the assigning act *at the time of the agreement*, and not leave it to some future date. See Bd. of Trustees of the Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc., 583 F.3d

PLAINTIFF GRAIL SEMICONDUCTOR INC.'S OPPOSITION TO RENESAS ELECTRONICS AMERICA INC.'S MOTION TO DISMISS THIS CASE FOR LACK OF SUBJECT MATTER JURISDICTION – CASE NO. C 11-03847-JCS

4

832, 841-42 (Fed. Cir. 2009) (finding present assignment in the language "I will assign and do hereby assign"), aff'd, 131 S. Ct. 2188 (2011); DDB Techs., 517 F.3d at 1290 (same, for language "agrees to and does hereby grant and assign"); Speedplay, Inc. v. Bebop, Inc., 211 F.3d 1245, 1253 (Fed. Cir. 2000) ("hereby conveys, transfers, and assigns"); FilmTec Corp. v. Allied-Signal Inc., 939 F.3d 1568, 1573 (Fed. Cir. 1991) ("agrees to grant and does hereby grant").

The operative paragraph in the Powergate Agreement, i.e., the **only** paragraph that addresses any contemplated transfer of patent rights, is paragraph 12. However, paragraph 12, shown below in its entirety, only constitutes an ***agreement to*** transfer patent rights in the future:

> **12.   Patents:**
>
> Each invention and/or idea and/or anything which can be registered as patent, which will be developed by any of the shareholders or by employees of the company and which will be in the field of activity of the company, ***will be registered*** in it's [sic] name, and ***will be*** in the sole ownership of the company.
>
> ***Each party undertakes to sign any document necessary for the implementation of the above.***

(Def's. Ex. 4 at REA000324 (emphases added)).  As the emphasized language shows, paragraph 12 states that inventions, ideas, or patentable subject matter ***will be*** registered in the company's name and ***will be*** solely owned by the company.  "Will be" is not "does hereby."  The fact that paragraph 12 only addresses an agreement to transfer rights in the future is further confirmed by the last sentence of paragraph 12, which Renesas inexplicably omitted from its citation.  By agreeing to undertake "to sign any document necessary for the implementation of the above," the parties recognized that the current paragraph did not involve "an immediate and present transfer."  If registration and sole ownership had already occurred because of paragraph 12, additional documentation would not have been necessary.

PLAINTIFF GRAIL SEMICONDUCTOR INC.'S OPPOSITION TO RENESAS ELECTRONICS AMERICA INC.'S MOTION TO DISMISS THIS CASE FOR LACK OF SUBJECT MATTER JURISDICTION – CASE NO. C 11-03847-JCS

5

1    Further, if the Powergate Agreement did in fact automatically assign the '552 patent, why

2    wouldn't Powergate record this assignment in the PTO to protect its interest in the '552 patent

3    from subsequent purchasers?  It did not – the only record of assignment for the '552 patent at the

4    PTO is from Stern to Grail.  (Def's. Ex. 12 at REA000861-000863; Pl's. Ex. A, PTO Record

5    Searches for "Powergate Ltd." and "Powergate Limited").

6    The mere agreement to assign (not an assignment itself) is further demonstrated by the

7    fact that, at the time Stern entered into the Powergate Agreement with Axon, ***there was no***

8    ***Powergate***:

9        Don and Shneor ***wish to incorporate a company*** (hereinafter:  "The company")
         which will engage in the development of new architecture of electronic devices
10       (Hereinafter:  "The products") (Def's. Ex. 4, REA000319 at 2nd Whereas clause
         (emphasis added))

11
         The parties ***agree to incorporate*** a company to be named Powergate Ltd., or any
12       similar name to be approved by the Companies Registrar.  (Id. at REA000320, ¶
         2(A) (emphasis added))
13
         Within 21 days from the date of signing this agreement, the parties ***will sign*** the
14       Memorandum of Association and the Articles of Association."  (Id., ¶ 2(B)
         (emphasis added)).
15
16   How could Stern immediately and presently transfer patent rights to a non-existent corporation?

17   He couldn't, which is why Stern and Axon agreed to assign such rights at a later date, once

18   Powergate was formed.

19   The Federal Circuit and district courts have uniformly found language like that found in

20   paragraph 12 – language that speaks in terms of what will be done – ineffective to automatically

21   transfer patent rights.  Abraxis, 625 F.3d at 1365 (language stating that a party "shall, or shall

22   cause" a transfer and that the purchaser "shall purchase and accept…all of the right title and

23   interests" in the patents was a promise to assign requiring a subsequent written assignment);

24   IpVenture, 503 F.3d at 1327 (agreement that used "agree to assign" did not effect an assignment

PLAINTIFF GRAIL SEMICONDUCTOR INC.'S OPPOSITION TO RENESAS ELECTRONICS AMERICA INC.'S MOTION TO
DISMISS THIS CASE FOR LACK OF SUBJECT MATTER JURISDICTION – CASE NO. C 11-03847-JCS

25                                                                                                    6

to third party); Gaia Techs., Inc. v. Reconversion Techs., Inc., 93 F.3d 774, 778-79, as amended 104 F.3d 1296 (Fed. Cir. 1996) (meeting minutes that memorialized an agreement to sell all assets to plaintiff sometime in the future was not an assignment and did not vest legal title in the plaintiff); Arachnid, Inc. v. Merit Indus., Inc., 939 F.2d 1574, 1580-81 (Fed. Cir. 1991) (language providing that "all rights to inventions developed during the consulting period 'will be assigned'" did not "rise to the level of a present assignment"); Ellison Educ. Equip., Inc. v. Chen, 2004 WL 3154592, *4-5 (C.D. Cal. Dec. 21, 2004) (finding language stating plaintiff "will assign…all rights" as constituting an agreement to assign); Freedom Wireless, Inc. v. Boston Commc'ns Group, Inc., 220 F. Supp. 2d 16, 19 (D. Mass. 2002) (denying motion for summary judgment based on lack of standing).   As such, Renesas must proffer a subsequent, written assignment to Powergate of Stern's rights in the '552 patent to successfully challenge Grail's standing.  It has not and cannot.  Hence, Renesas's motion must be denied.

**B.     Stern's And Speizer's Post-Agreement Statements Are Irrelevant**

Trying to fix its problem, Renesas claims that subsequent statements made by Stern and Mark Speizer (Grail's former Chairman of the Board and CEO) show that the parties to the Powergate Agreement intended for Stern's patent rights to be immediately transferred to Powergate.  (Def's. Mot. to Dismiss at 9-11).  But, even assuming *arguendo* the accuracy of Renesas's characterization of these statements, these after-the-fact statements cannot override the clear and unambiguous language of the Powergate Agreement itself, which, under the Federal Circuit's controlling precedent, constitutes a mere agreement to assign.  When looking at whether contractual language constitutes an automatic assignment or not, the Federal Circuit and district courts have eschewed inquiries into the parties' intent.  See, e.g., SiRF Tech., 601 F.3d at 1326; DDB Techs., 517 F.3d at 1289-90; Gaia Techs., 93 F.3d at 779-80; FilmTec, 939 F.2d at 1573; Arachnid, 939 F.2d at 1580-81; Ellison, 2004 WL 3154592 at *3-4; Freedom Wireless, 220 F.

PLAINTIFF GRAIL SEMICONDUCTOR INC.'S OPPOSITION TO RENESAS ELECTRONICS AMERICA INC.'S MOTION TO DISMISS THIS CASE FOR LACK OF SUBJECT MATTER JURISDICTION – CASE NO. C 11-03847-JCS

7

Supp. 2d at 19-20; see also WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc., 655 F.3d 1039, 1051 (9th Cir. 2011) (under California law, "[e]xtrinsic evidence may not be used to contradict unambiguous express contractual terms."); Saints v. Winter, 2007 WL 2481514, *4 (S.D. Cal. Aug. 29, 2007) (under federal law,"[e]xtrinsic evidence can be considered only if there is an ambiguity in the contract"); The Contracts (General Part) Law, 1973, S.H. 118, ¶ 25(a), available at http://www.israelinsurancelaw.com/contract-laws/contracts-general-part-law-1973.html ("A contract will be interpreted in accordance with the intention of the parties, *as it appears from it*, or, if the intention is not apparent from it, as it appears from the circumstances." (emphasis added)).[1]

Furthermore, Stern is not a lawyer and his characterization of the attempted agreement should not be construed as legal conclusions.  The credibility and objectivity of Mark Speizer's statements must also be seriously questioned, as they were made in the context of contentious litigation between himself and Stern.  The Court must focus on the clear language of the Powergate Agreement – which mandates denial of Renesas's motion – instead of Renesas's characterization of statements made by Stern and Speizer.

### III.   THE POWERGATE AGREEMENT IS VOID THROUGH MUTUAL NON-PERFORMANCE AND NOT BINDING ON STERN OR POWERGATE

As an additional and independent reason, Renesas's motion to dismiss must be denied because the Powergate Agreement is not enforceable against or binding on Stern.  First, the Powergate Agreement is void because of mutual non-performance by the parties.  Second, the

---

[1] At this stage of the litigation, which jurisdiction governs consideration of the Powergate Agreement (other than the determination of whether a present and automatic transfer occurred) has not been confirmed.  Accordingly, with regards to principles of contract law, Grail has endeavored to cite to California, federal, and Israeli legal authorities where possible.

PLAINTIFF GRAIL SEMICONDUCTOR INC.'S OPPOSITION TO RENESAS ELECTRONICS AMERICA INC.'S MOTION TO DISMISS THIS CASE FOR LACK OF SUBJECT MATTER JURISDICTION – CASE NO. C 11-03847-JCS

8

Powergate Agreement does not require Stern to assign his rights in the '552 patent, because he was never an employee or shareholder subject to paragraph 12.

*First*, it is a general principle of contract law that an agreement is void if neither party performs or fulfills its contractual obligations and duties.  See <u>JLG Enters., Inc.</u> v. <u>Excalibur Sires, Inc.</u>, 2011 WL 1103325, *7 (E.D. Cal. Mar. 22, 2011) (total breach entitles repudiation of an entire contract); <u>Kittle Mfg. Co.</u> v. <u>Davis</u>, 47 P.2d 1089, 1094 (Cal. Dist. Ct. App. 1935) ("The contract must be enforced against both parties or against neither."); Restatement (Second) of Contracts § 237 cmt. b ("The rule is based on the principle that where performances are to be exchanged under an exchange of promises, each party is entitled to the assurance that he will not be called upon to perform his remaining duties of performance with respect to the expected exchange if there has already been an uncured material failure of performance by the other party."); The Contracts (Remedies for Breach of Contract) Law, 1973, S.H. 16, ¶ 2, available at http://www.israelinsurancelaw.com/contract-laws/contracts-remedies-for-breach-of-contract-law.html ("When a contract has been breached, the injured party is entitled to claim its enforcement *or to rescind the contract*...." (emphasis added)).  Here, neither Stern nor Axon fully fulfilled their mutual and respective obligations as required by several paragraphs in the agreement.  For example:

- Neither a Memorandum of Association nor an Articles of Association was signed within 21 days from the date of the Powergate Agreement (Def's. Ex. 4, REA000320, at ¶ 2(B));

- No registered capital was completed, no shares issued, no trust set up to hold the shares, and no payments were made for the shares (Def's. Ex. 4, REA000320, at ¶ 3);

- No board of directors was created and no board meetings were held (Def's. Ex. 4, REA000320-000321, at ¶ 4);

- No employment agreements were ever prepared for Sneor or Stern (Def's. Ex. 4, REA000324, at ¶ 13).

PLAINTIFF GRAIL SEMICONDUCTOR INC.'S OPPOSITION TO RENESAS ELECTRONICS AMERICA INC.'S MOTION TO DISMISS THIS CASE FOR LACK OF SUBJECT MATTER JURISDICTION – CASE NO. C 11-03847-JCS

9

Exhibit B is a highlighted copy of the Powergate Agreement, which shows every provision of the agreement that was not fully performed.  Moreover, the raising of capital and the provision of start-up money were critical to the agreement, as reflected in the following WHEREAS clauses:

> The development of the products necessitates at the first stage, a substantial financial investment;

> Based on the above declarations, Axon is interested in being a shareholder in the company, and in participating in its management, and is willing to give loans to the company, as hereinafter specified

(Def.'s. Ex. 4 at REA00319).

These breaches of the Powergate Agreement were confirmed by Stern in his letter to Axon, in which he stated that "[t]he second and third stages were not executed.  Several points of the contract were never executed and a four-month delay in the funding caused additional spending beyond the budget."  (Id. at REA000333).   In these circumstances, the Powergate Agreement, including paragraph 12, must be found to be void, rendering any purported assignment or transfer of rights in the '552 patent to Powergate ineffective.

***Second***, paragraph 12 unambiguously states:   "Each invention and/or idea and/or anything which can be registered as a patent, which will be ***developed by any of the shareholders or by employees of the company***…will be registered in it's [sic] name[.]"  (Def.'s Ex. 4 at REA000324 (emphasis added)).  Critically, Stern was never a shareholder of Powergate, because no shares were ever issued.  And Stern was never an employee of the company, because no employment agreements were prepared or executed pursuant to paragraph 13 of the Powergate Agreement.

Accordingly, even if the Powergate Agreement was valid and enforceable, Stern never had any obligation under the agreement to assign any invention, idea or anything that could be registered as a patent to Powergate.  As neither a shareholder nor an employee of Powergate,

PLAINTIFF GRAIL SEMICONDUCTOR INC.'S OPPOSITION TO RENESAS ELECTRONICS AMERICA INC.'S MOTION TO DISMISS THIS CASE FOR LACK OF SUBJECT MATTER JURISDICTION – CASE NO. C 11-03847-JCS

10

1   Stern was free to assign his intellectual property rights without encumbrance to whomever he

2   chose, which, in this case, was Grail.  This is yet another independent reason why the motion

3   should be denied.

4   **IV.    GRAIL IS A *BONA FIDE* PURCHASER FROM STERN**

5          As a third independent basis for standing, even if it was found that Stern had assigned his

6   rights to Powergate pursuant to the 1997 Powergate Agreement (which he did not), Grail still has

7   standing to bring this suit because it is a *bona fide* purchaser of the '552 patent.  "Generally, a

8   *bona fide* purchaser is one who purchases legal title to property in good faith for valuable

9   consideration, without notice of any other claim of interest in the property."  Rhone-Poulenc

10  Agro, S.A. v. DeKalb Genetics Corp., 284 F.3d 1323, 1329 (Fed. Cir. 2002).   Grail satisfies

11  these requirements.

12         In 2000, Grail purchased, and was assigned the rights to, the '552 patent for value.  (Def's.

13  Ex. 2 at REA000002-00003, ¶¶ 8, 11; Def's. Ex. 11 at REA000847-000851; Def's. Ex. 12 at

14  REA000860-000863).   At this time, Grail had no notice of any adverse claims of title (legal,

15  equitable or otherwise) to the '552 patent.  Specifically, based on Renesas's evidence, the only

16  entity that could have had an adverse claim to title – Powergate – never recorded any claim or

17  interest in the '552 patent.  (Pl's. Ex. A).  Nor did it ever notify Grail of any adverse claim.

18         Renesas may contend that the *bona fide* purchaser defense is not applicable because Stern

19  "was also an officer of Grail and at all times had 'notice' of the earlier assignment to Powergate,"

20  (Def's. Mot. to Dismiss at 13 n.14).   But, Stern is not Grail.   And, even if Stern's knowledge

21  could be imputed to Grail, Stern himself also did not have notice of any adverse ***claim of interest***

22  in the '552 patent ***from Powergate***.   See Rhone-Poulenc, 284 F.3d at 1329 ("Generally, a *bona*

23  *fide* purchaser is one . . . without notice of any ***other claim of interest*** in the property." (emphasis

24  added)).  Stern believed he still owned his inventions; otherwise, he would not have assigned and

1    sold them to Grail.  A search of the PTO website for any adverse claims of ownership in the '552

2    patent would not have uncovered any by Powergate.  (Pl's. Ex. A).

3          Finally, it is altogether reasonable to rely upon the official records maintained by the

4    PTO under the recording statute to determine whether there were pending adverse claims to the

5    title for the '552 patent.  That's what title searches for property are designed to uncover.  Patents

6    are personal property, and the patent recording statute is based upon the concept of recording

7    statutes for real property.  35 U.S.C. § 261; <u>Filmtec Corp.</u>, 939 F.2d at 1573.

8          Hence, because Powergate failed to record any ownership interest or claim in the '552

9    patent with the PTO, and because Grail did not otherwise have any notice of Powergate's alleged

10   claim to ownership, any equitable ownership interest Powergate may have had by virtue of an

11   agreement to assign arising from the breached Powergate Agreement cannot be asserted against

12   Grail:

> It is well established that when a legal title holder of a patent transfers his or her
> title to a third party purchaser for value without notice of an outstanding equitable
> claim or title, *__the purchaser takes the entire ownership of the patent, free of any
> prior equitable encumbrance. Hendrie v. Sayles, 98 U.S. 546, 549, 25 L. Ed. 176
> (1879)__*. This is an application of the common law bona fide purchaser for value
> rule. Section 261 of Title 35 goes a step further.  It adopts the principle of the real
> property recording acts, and provides that the bona fide purchaser for value cuts
> off the rights of a prior assignee who has failed to record the prior assignment in
> the Patent and Trademark Office by the dates specified in the statute.

18   <u>Filmtec</u>, 939 F.2d at 1573 (emphasis added).  Nor can any "equitable" claim of any other

19   description be asserted against Grail:

> The bona fide purchaser rule exists to protect innocent purchasers of property
> from competing equitable interests in the property because **"*strong as a
> plaintiff's equity may be, it can in no case be stronger than that of a purchaser,
> who has put himself in peril by purchasing a title, and paying a valuable
> consideration, without notice of any defect in it, or adverse claim to it ....*"**
> *Boone v. Chiles, 35 U.S. 177, 210, 9 L. Ed. 388 (1836))*. ... In fact, the title rule is
> recognized in modern property law, and has been confirmed by the U.C.C.,
> Articles 2 and 2B. Under *U.C.C. Article 2-403*, **even "[a] person with voidable
> title has power to transfer a good title to a good faith purchaser for value."**

Rhone-Poulenc, 284 F.3d at 1329-30 (emphases added).

In addition, any legal ownership interest – that is, any claim to legal title – that Powergate may have had by virtue of the Powergate Agreement cannot be asserted against Grail:

> Section 261 of Title 35 ... adopts the principle of the real property recording acts, and provides that **the bona fide purchaser for value cuts off the rights of a prior assignee who has failed to record the prior assignment in the Patent and Trademark Office by the dates specified in the statute.** Although the statute does not expressly so say, it is clear that the statute is intended to cut off prior **legal** interests, which the common law rule did not.

Filmtec, 939 F.2d at 1573-74 (first emphasis added).

Because Powergate never recorded any ownership interest (or any other kind of interest) in the '552 patent before the date of Grail's purchase, it missed "the dates specified in the statute" – and Grail took "the entire ownership of the patent, free of any prior equitable encumbrance" and clear of any adverse claims of legal title to the '552 patent. Filmtec, 939 F.2d at 1573-74.

## V.   THIS IS NOT UNLIKE A SALE OF REAL PROPERTY THAT NEVER OCCURRED

The patent recording statute is based upon real property recording statutes. Let's assume party A agrees to sell a house to party B, but the time for closing comes and goes, and party A refuses to transfer title. Party B does nothing. Party A then sells the property to party C who performs a title search, sees no adverse claims by party B and purchases the property. Legal title passes and party C records. In this scenario, party B does not have title, just as Powergate has no title to the '552 patent here.

In real property dealings, a buyer obtains an equitable interest in a piece of property through a contract of sale, but legal title does not transfer to the buyer until closing, which occurs after payment of the purchase price by the buyer. See, e.g., In re Gonzalez, 456 B.R. 429, 437 (C.D. Cal. 2011); In re Hathaway Ranch P'ship, 127 B.R. 859, 863 (C.D. Cal. 1990). Even

PLAINTIFF GRAIL SEMICONDUCTOR INC.'S OPPOSITION TO RENESAS ELECTRONICS AMERICA INC.'S MOTION TO DISMISS THIS CASE FOR LACK OF SUBJECT MATTER JURISDICTION – CASE NO. C 11-03847-JCS

13

1  though the buyer only holds equitable interest, it is well-established that specific performance is

2  the only adequate remedy for a breach of agreement to transfer real property.  See, e.g., Lewis v.

3  Superior Court, 37 Cal. Rptr. 2d 63, 80 (Cal. App. Ct. 1994).   And a *bona fide* purchaser's

4  interest in the property will destroy a buyer's right to specific performance.  See Countrywide

5  Home Loans, Inc. v. United States, 2007 WL 87827, *9 (E.D. Cal. Jan. 9, 2007); Perry v.

6  O'Donnell, 749 F.2d 1346 (9th Cir. 1984).   Unrecorded interests are altogether invalid against a

7  *bona fide* purchaser.   Time Warner Entm't-Advance/Newhouse P'ship v. Steadfast Orchard Park,

8  L.P., 2008 WL 4350054, *10 (C.D. Cal. Sept. 23, 2008).

9  **VI.    CONCLUSION**

10         For all the aforementioned reasons, Grail respectfully requests that the Court deny

11  Renesas's motion to dismiss this case for lack of jurisdiction.

12                                        Respectfully submitted,

13                                        */s/ Christopher J. Lee*
                                        NIRO, HALLER & NIRO
14                                        Raymond P. Niro (Member of the N.D. Cal. Bar)
                                        Christopher J. Lee (*Pro Hac Vice*)
15                                        Kara L. Szpondowski (*Pro Hac Vice*)
                                        Anna B. Folgers (*Pro Hac Vice*)
16                                        Gabriel I. Opatken (*Pro Hac Vice*)
                                        181 West Madison, Suite 4600
17                                        Chicago, IL 60602-4515
                                        Phone: (312) 236-0733/Fax: (312) 236-3137
18                                        E-mails: rniro@nshn.com;clee@nshn.com;
                                        szpondowski@nshn.com; afolgers@nshn.com;
19                                        gopatken@nshn.com

20                                        DAVIS WRIGHT TREMAINE LLP
                                        MARTIN L. FINEMAN, Bar No. 1104413
21                                        505 Montgomery Street, Suite 808
                                        San Francisco, CA 94111
22                                        Phone: (415) 276-6575/Fax: (415) 276-6599
                                        Email: martinfineman@dwt.com
23                                        ***Attorneys for Plaintiff***
                                        ***Grail Semiconductor, Inc.***

24

1

2

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on December 2, 2011 the foregoing

3

4

**PLAINTIFF GRAIL SEMICONDUCTOR INC.'S OPPOSITION TO RENESAS ELECTRONICS AMERICA INC.'S MOTION TO DISMISS THIS CASE FOR LACK OF SUBJECT MATTER JURISDICTION**

5

was filed with the Clerk of Court using the CM/ECF system, which will then send a notification

6

of such filing to the following counsel of record.

7

8

9

10

11

Michael D. Switzer (mswitzer@ulmer.com)
Brian C. Bianco (bbianco@ulmer.com)
Alissa R. Misun (amisun@ulmer.com)
Ulmer & Berne LLP
500 West Madison Street
Suite 3600
Chicago, IL  66661-4587
Telephone:  312-658-6530
Fax:  312-658-6531

G. Ross Allen (State Bar No. 262968)
Kilpatrick Townsend & Stockton LLP
1080 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 326-2400
Facsimile: (650) 326-2422
Email: grallen@kilpatricktownsend.com

***Attorneys for Defendant***
***Renesas Electronics America Inc*.**

12

13

***Attorneys for Defendant***
***Renesas Electronics America Inc.***

14

15

I certify that all parties in this case are represented by counsel who are CM/ECF participants.

16

17

*/s/ Christopher J. Lee*
NIRO, HALLER & NIRO
Attorneys for Plaintiff Grail Semiconductor, Inc.

18

19

20

21

22

23

24

25

PLAINTIFF GRAIL SEMICONDUCTOR INC.'S OPPOSITION TO RENESAS ELECTRONICS AMERICA INC.'S MOTION TO
DISMISS THIS CASE FOR LACK OF SUBJECT MATTER JURISDICTION – CASE NO. C 11-03847