UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW REIBMAN,<br><br>    Plaintiff,<br><br>    v.<br><br>RENESAS ELECTRONICS AMERICA, INC.,<br><br>    Defendant. | Case No. 11-cv-03847-JCS<br><br>**ORDER DENYING DEFENDANT'S MOTION TO JOIN AND/OR SUBSTITUTE PARTIES PURSUANT TO FED. R. CIV. P. 19(A) AND/OR 25(C), AMEND ITS ANSWER, AND ASSERT ITS DECLARATORY JUDGMENT CLAIMS AGAINST MISCHON DE REYA NEW YORK LLP**<br><br>Re: Dkt. No. 169 |

## I. INTRODUCTION

Defendant Renesas Electronics America Inc. ("Renesas") seeks to join Mishcon de Reya New York LLP ("Mishcon") in this patent action. Before the Court is Renesas' motion to join or substitute Mishcon under Rule 19 or 25(c) of the Federal Rules of Civil Procedure, to amend its answer, and to assert its declaratory judgment counterclaims against Mishcon ("Motion"). A hearing on the Motion was held on October 4, 2013, during which the Court continued the hearing to December 6, 2013 in light of a patent auction scheduled for November 21, 2013 that could affect the outcome of this Order. *See* Dkt. No. 184. On December 3, 2013, Renesas requested leave to supplement its Motion. *See* Dkt. No. 188. The Court granted Renesas' request and ordered Mishcon to file an opposition to the supplement, which was filed on December 17, 2013. *See* Dkt. Nos. 189; Renesas' Supplement to Mot. ("Suppl."); Mishcon's Opp'n to Suppl. ("Opp'n to Suppl."). The Court also vacated the December 6, 2013 hearing, finding the matter appropriate for decision without further oral argument. *See* Dkt. No. 189; N.D. Cal. Civ. L. R. 7-1(b). Renesas and Andrew Reibman ("Reibman") have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons stated below, the Court DENIES

the Motion. In light of this decision and the fact that Reibman, the plaintiff and counter-defendant in this case, no longer has any interest in the patent-in-suit, the Court dismisses this case in its entirety without prejudice.

## II. BACKGROUND

### A. Facts

In August 2010, Mishcon began representing Grail Semiconductor ("Grail") in a breach of contract and trade secret misappropriation lawsuit against Mitsubishi Electronic Corporation ("Mitsubishi") and other defendants. *See* Decl. of Brian Bianco in Supp. of Mot. ¶ 5 ("Bianco Decl."), Ex. D ¶ 2; Decl. of James McGuire in Supp. of Opp'n ¶¶ 2–4 ("McGuire Decl."). At some point thereafter, Grail apparently retained Mishcon to pursue patent infringement litigation. *See* Bianco Decl. ¶ 6, Ex. E. ¶ 1.

Over the course of the next year, the relationship between Mishcon and Grail deteriorated. In July 2011, Mishcon commenced arbitration proceedings against Grail, seeking damages for unpaid legal fees. *See* McGuire Decl. ¶ 6. Mishcon eventually prevailed and judgment was entered in its favor. *See id.* ¶ 10. However, Mishcon feared that Grail would not pay on its judgment, and it initiated a lawsuit in the United States District Court for the Southern District of New York ("New York District Court"), seeking to require Grail to provide Mishcon with a security interest in its "sole appreciable asset," U.S. Patent No. 6,642,552 ("'552 patent"). *See id.* ¶ 7. *See also* Bianco Decl. Ex. C at 12:25–13:2 (Mishcon stating during hearing before New York District Court that Grail was insolvent and '552 patent was Grail's only asset "of any consequence").

During the proceedings before the New York District Court, Mishcon made several statements regarding the value of the patent. For example, Mishcon stated that "it would be highly likely that an entity purchasing the ['552] patent would persist, albeit in a different action, in prosecuting the patent infringement case." *Id.* Ex. C at 11:16–20. Mishcon also stated that "[t]he patent is worth something today because of possible [sic] prospective value of what that patent and its specter might bring in the [Mitsubishi] action and in the patent action." *Id.* Ex. C at 20:7–9.

As Mishcon's case progressed before the New York District Court, Grail retained new counsel and, in August 2011, brought the instant action against Renesas alleging infringement of

the '552 patent. *See* Compl. ¶¶ 2–5; First Am. Compl. ¶¶ 2–5. Renesas counterclaimed, seeking declaratory judgments for non-infringement, invalidity, and unenforceability of the '552 patent. *See* Answer ¶¶ 17–25; Am. Answer ¶¶ 17–29.

In January 2013, the New York District Court ordered Grail to assign the '552 patent to a court-appointed receiver, Reibman. *See* Dkt. No. 137 at 3. Thereafter, Grail assigned all of its rights in the '552 patent to Reibman who was substituted for Grail as the plaintiff in this case. *See* Dkt. Nos. 137-1, 147 at 6. In his capacity as the receiver, Reibman facilitated an auction of the '552 patent. *See* Dkt. No. 157 at 2. Mishcon, the only bidder, won the auction with a $500,000 credit bid. *See id*. Subsequently, Reibman assigned the '552 patent to Mishcon. *See* Bianco Decl. Ex. G; McGuire Decl. Ex. B. The assignment transfers the following rights to Mishcon:

> any and all past, present and future causes of action and other enforcement actions (including, without limitation, for injunctive remedies and relief) and rights to damages and profits, due or accrued, relating to any of the forgoing, including the right to sue and recover for, and the rights to profits and damages, due or accrued, arising out of or in connection with, any and all past, present or future infringements or dilutions.

Bianco Decl. Ex. G; McGuire Decl. Ex. B.

In July 2013, Renesas requested that Mishcon provide a covenant not to sue as to the '552 patent. *See* Bianco Decl. ¶ 3. Mishcon did not respond to this request. *See id.* Shortly thereafter, Renesas filed its Motion to join or substitute Mishcon as the plaintiff in the instant action.

Mishcon opposes the Motion, stating that it "never intended to remain the permanent owner of the '552 patent nor take over litigation of this action. Mishcon's sole interest was and is to be compensated for the legal services it performed for Grail . . . ." *See* McGuire Decl. ¶ 21. Additionally, Mishcon intends to sell the '552 patent. *See id.* ¶ 20. To this end, it arranged for an auction to be held by ICAP Patent Brokerage ("ICAP") on September 30, 2013, which was later postponed to November 21, 2013. *See id.*; Dkt. No. 182 ¶ 4.

In connection with that auction, ICAP made publicly available numerous documents related to the '552 patent that would allow potential buyers to conduct due diligence. *See* Decl. of Vincent Filardo, Jr. in Supp. of Opp'n to Suppl. ¶ 3 ("Filardo Decl."). These documents included an infringement analysis, prepared by attorney and non-party Gregory Howison, providing a legal opinion that a certain Renesas product infringes the '552 patent. *See* Decl. of Peter G. Hawkins in

3

Supp. of Suppl. ("Hawkins Decl.") Ex. 2 ("Infringement Analysis"); Filardo Decl. ¶¶ 4, 6. This analysis had been originally prepared on behalf of Grail for its lawsuit against Mitsubishi in March 2011. *See* Filardo Decl. ¶ 4. Prior to its publication by ICAP for the November 21, 2013 auction, it had been provided by Grail to Renesas under seal during discovery in the instant action. *See* Hawkins Decl. ¶ 7 (citing Dkt. No. 177-2).

The November 21, 2013 auction was held, but no bids were received and the patent was not purchased. Dkt. No. 187 ¶ 2. Mishcon has represented to the court that it "continues to evaluate its options with regard to the '552 [p]atent, but . . . it has no present intent to enforce the '552 [p]atent or otherwise bring a claim against Renesas for infringement, and is continuing its efforts to sell the '552 [p]atent privately." Filardo Decl. ¶ 11.

### B.      Summary of Arguments

#### 1.      Motion

Renesas argues that Mishcon must be joined or substituted as a party in this action. First, Renesas argues that Mishcon is a required party under Rule 19(a) of the Federal Rules of Civil Procedure as the owner of the '552 patent. Def.'s Mot. to Join and/or Substitute at 4–5 ("Mot."). Second, Renesas argues that Rule 25(c) of the Federal Rules of Civil Procedure allows the third party assignee of a patent-in-suit to be substituted for the assignor on a motion to substitute, where the patent-in-suit is assigned during the litigation. *Id.* at 5–6. Third, Renesas argues that it should be allowed to amend its declaratory judgment counterclaims to name Mishcon as a defendant and seeks leave to do so under Rule 15(a) or 15(d) of the Federal Rules of Civil Procedure. *Id.* at 6–10.

Renesas asserts that an actual case or controversy exists between Mishcon and Renesas, meeting the requirement that claims for declaratory judgment are "definite and concrete, touching the legal relations of parties having adverse legal interests." *Id.* at 6 (quoting *MedImmune, Inc. v. Genentech*, 549 U.S. 118, 127 (2007)). Second, Renesas contends that because Mishcon purchased the '552 patent at a time that it was aware of this litigation, it steps into Grail's shoes and takes the '552 patent "subject to the legal consequences of the previous acts of the patentee." *Id.* at 8–9 (quoting *Worley v. Loker Tobacco Co.*, 104 U.S. 340, 344 (1881)).

///

4

### 2.     Opposition

Pursuant to this Court's August 23, 2013 order, Mishcon filed a non-party opposition to the Motion. First, Mishcon argues that Renesas has failed to demonstrate that joinder is feasible for the purposes of Rule 19 because it has not shown that this Court has personal jurisdiction over Mishcon. Mishcon's Opp'n to Mot. at 6–10 ("Opp'n"). Second, Mishcon argues that Rule 25(c) does not require that a substitution be forced upon an unwilling litigant. *Id.* at 13–14. Third, Mishcon argues that there is no existing or imminent controversy between Renesas and Mishcon sufficient to create Article III subject matter jurisdiction because: (1) Mishcon did not initiate this action, or any other action, against Renesas; (2) Mishcon has never threatened suit against Renesas; and (3) Mishcon did not take any other action demonstrating that such a controversy exists. *Id.* at 15–16. Fourth, Mishcon argues that this Court was divested of subject matter jurisdiction when Reibman transferred the '552 patent to Mishcon. *Id*. at 16.

### 3.     Reply

Renesas replies with three arguments. First, Renesas argues that personal jurisdiction is imputed to Mishcon by application of Rule 25(c), independent of a minimum contacts analysis. Def.'s Reply to Opp'n at 3 ("Reply"). Specifically, Renesas argues that where an original party transfers its interest in a lawsuit to a new party, and the new party is substituted for the original party under Rule 25(c), the court's personal jurisdiction over the original party is imputed to the new party. *Id.* at 3–5.

Second, Renesas argues that the Court has personal jurisdiction over Mishcon, making joinder feasible under Rule 19, because Mishcon has minimum contacts with this forum. Renesas puts forward a minimum contacts analysis based on the Federal Circuit's three-factor test. Reply, at 7 (citing *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001) (quoting *Akro Corp. v. Luker*, 45 F.3d 1541, 1545 (Fed. Cir. 1995)). Renesas argues that: (1) Mishcon "purposefully directed" activities at residents of this forum by acquiring an economic stake in the litigation through its purchase of the '552 patent, representing Grail in a California state court case, and registering with this Court a foreign judgment against Grail from the New York District Court; (2) the claims at issue arise out of these activities; and (3) the Court's assertion of personal

5

jurisdiction would be fair and reasonable. Reply, at 7–12. Renesas further argues that Mishcon incorrectly used the Ninth Circuit minimum contacts test instead of the Federal Circuit test, which Renesas contends should apply because this is a patent case. *Id.* at 2, 7, 10.

Third, Renesas argues that the Court has subject matter jurisdiction over the case. Specifically, Renesas argues that the application of Rule 25(c) cures any lack of subject matter jurisdiction. *Id.* at 13. Renesas further argues that Mishcon's statements to the District Court in New York regarding the patent's litigation value, together with Mishcon's refusal to provide a covenant not to sue, constitute sufficient evidence of an actual case or controversy. *Id.*

### 4. Sur-reply

Mishcon requested leave to file a sur-reply, which the Court granted. *See* Dkt. No. 179; Mishcon's Sur-reply in Further Opp'n to Mot. ("Sur-reply"). First, Mishcon argues that Renesas' argument regarding Rule 25(c) is incorrect and that the cases cited by Renesas are distinguishable from the instant case. Sur-reply at 2–4. Mishcon further argues that the application of Rule 25(c) is inappropriate because: (1) it has not been voluntarily substituted into the lawsuit; (2) it is not a successor-in-interest to Grail or Reibman; (3) neither Grail nor Reibman are shell corporations; and (4) the issue of consent to litigate before the Court is not ripe. *Id.* at 4.

Second, Mishcon argues that Renesas has failed to establish a *prima facie* case for personal jurisdiction through the minimum contacts test. Specifically, Mishcon argues that the acquisition of the '552 patent cannot support an assertion of purposeful availment because the patent is intangible property with no inherent connection to California. *Id.* at 5–6. Mishcon further argues that the issues in the instant litigation do not arise from any of the activities identified by Renesas. *Id.* at 8–9. Finally, Mishcon restates its argument that it would be neither fair nor reasonable to compel Mishcon to be a party to this action. *Id.* at 8–10.

### 5. Supplement to Motion

Renesas requested leave to file a supplement to the Motion to bring "new facts" to the Court's attention, which the Court granted. *See* Dkt. No. 189. Primarily, Renesas argues that ICAP's publication of the Infringement Analysis—which asserts that a certain Renesas product infringes on the '552 patent—creates an independent basis for a substantial controversy that gives

6

rise to subject matter jurisdiction. *See* Suppl. at 4–5 (citing *SanDisk Corp. v. STMicroelectronics*, 480 F.3d 1372 (Fed. Cir. 2007)). Renesas also argues that this case is distinguishable from the decision in *Trend Micro Corp. v. Whitecell Software, Inc.*, C-10-02248 WHA, 2010 WL 4722504, at *4 (N.D. Cal. Nov. 15, 2010) ("*Trend Micro I*") and *Trend Micro Corp. v. Whitecell Software, Inc.*, C-10-02248 WHA, 2011 WL 499951, at *1 (N.D. Cal. Feb. 8, 2011) ("*Trend Micro II*"), which ultimately dismissed declaratory judgment claims for patent non-infringement and invalidity because of lack of subject matter jurisdiction. *See* Suppl. at 7–8.

### 6. Opposition to Supplement

In accordance with the Court's December 4, 2013 order, Mishcon filed an opposition to Renesas' supplemental brief. *See* Dkt. No. 189. First, Mishcon argues that ICAP's publication of the Infringement Analysis is not a "new fact," nor does it constitute an independent basis for subject matter jurisdiction. *See* Opp'n to Suppl. 4–7. Second, Mishcon argues that it has no burden to prove that claims arising from the '552 patent will never be asserted by future owners. *See id.* at 7–9. Third, Mishcon argues that this case is not distinguishable from *Trend Micro I* and *II*. *See id.* at 9–11.

## III. ANALYSIS

### A. Rule 19

Rule 19 provides for joinder of necessary parties. It requires the court to determine whether the absentee is necessary, whether the absentee may be feasibly joined, and, if the absentee may not be feasibly joined, whether the action should be dismissed because the absentee is indispensible. *E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 779–80 (9th Cir. 2005). Joinder is not feasible when the absentee is not subject to personal jurisdiction. *Id.* at 779 (citing Fed. R. Civ. P. 19(a)). An absentee is indispensible if he "not only ha[s] an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." *Id.* at 779–80 (citing *Shields v. Barrow*, 58 U.S. 130, 139 (1854)).

Renesas argues that this Court has specific personal jurisdiction over Mishcon pursuant to

7

the minimum contacts test, such that joinder would be feasible. Renesas premises its argument on three of Mischon's activities. *See* Reply at 3–12. The Court is not persuaded. As described below, under the traditional personal jurisdiction analysis applied to Rule 19 motions, the Court concludes that it may not join Mishcon. The only caveat to this analysis is Rule 25—if the Court determines that it is appropriate to exercise its discretion to invoke that rule governing joinder of successors, then the Court may exercise personal jurisdiction over Mishcon as a successor. However, as will be seen, the Court has decided not to exercise that discretion.

First, Renesas argues that Mishcon's status as the successor to the '552 patent supports a finding of minimum contacts. Renesas cites a case holding that a successor's "knowing acquisition of an economic stake in [the dissolved predecessor defendant's] counterclaims" supported a finding of minimum contacts. *See* Reply at 8 (citing *Resonant Sensors Inc. v. SRU Biosystems, Inc.*, 3:08-CV-1978-M, 2012 WL 5843498, at *4 (N.D. Tex. Nov. 16, 2012)). However, that case did not address joinder under Rule 19 and is therefore inapposite.

Second, Renesas argues that because Mishcon represented Grail *pro hac vice* in California, it has purposefully availed itself of the benefits of this forum. While attorneys representing parties *pro hac vice* in another forum do expect to be subject to the attorney discipline laws of that forum, they do not expect to be availing themselves of the laws of that forum for all purposes. *See Advanced Multilevel Concepts, Inc. v. Stalt, Inc.*, 11-6679-SC, 2012 WL 1835734, at *4 (N.D. Cal. May 21, 2012) (California *pro hac vice* rule "does not provide that a *pro hac vice* appearance subjects an attorney to jurisdiction in California for claims unrelated to that appearance"). Thus, Mishcon's appearance as counsel in the action against Mitsubishi is not sufficient to establish minimum contacts that would subject it to jurisdiction as a potential plaintiff and counter-defendant in the instant action against Renesas.

Third, Renesas argues that Mishcon registered the foreign judgment in this state in order to facilitate its acquisition of the economic benefits of the '552 patent because, without the judgment, Mishcon could not have acquired the patent. *See* Reply at 9, 10. However, Renesas does not cite any authority to support its argument, and the Court does not find this sufficient to establish minimum contacts.

Finally, Renesas argues that Mishcon incorrectly used the Ninth Circuit minimum contacts test instead of the Federal Circuit test, which Renesas contends should apply because this is a patent case. *Id.* at 2, 7, 10. The tests themselves are actually the same. *See Winstron Corp. v. Phillip M. Adams & Assocs., LLC*, No. C-10-4458 EMC, 2011 WL 1654466, at *3 (N.D. Cal. Apr. 28, 2011) ("both Circuits apply the same three-part test when applying the minimum contacts standard set forth by the Supreme Court"). However, the Federal Circuit has expressed a more "far more permissive" view on the second prong of the test, which requires that claims arise out of or are related to the party's activities in the forum. *See* Reply at 10 (citing *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008)). The Court notes that regardless of which test is used here, the facts cited by Renesas do not show that Mishcon has minimum contacts with this forum.

Rule 19, therefore, does not by itself provide a mechanism by which to join Mishcon: in the absence of an independent basis of personal jurisdiction, such joinder is not feasible. Without Mishcon, Reibman has no remaining interest in the patent. Mishcon has an "interest in the controversy" that will materially be affected by an adjudication of its infringement or invalidity of the '552 patent. Under the circumstances, continuing with the litigation in the absence of joinder (if it could be done) would prejudice the current patent holder. That prejudice could not be avoided. Pursuant to Rule 19, at least, the case should therefore be dismissed without prejudice. However, this does not end the inquiry given the procedures contained in Rule 25(c). That rule is addressed below.

**B.     Rule 25(c)**

Rule 25(c) provides a procedural mechanism by which a party may bring a motion to substitute a non-party successor to an interest that is the subject of a suit. Mishcon argues that this rule is not applicable because it is not a successor in interest to Reibman. The Court disagrees, but it exercises its discretion to deny the substitution.

Mishcon is a law firm, which is not in the business of owning patents or prosecuting infringement actions on its own behalf. Indeed, in this case, Mishcon has never threatened Renesas with an infringement suit, has not itself accused Renesas of infringement, and has not demanded

9

1  that Renesas enter into a license agreement. Mishcon is merely trying to sell the patent that it
2  acquired as a judgment debtor. Under these circumstances—and absent Mishcon's substitution as
3  the plaintiff and counter-defendant—there is no controversy between Mishcon and Renesas.
4  Moreover, substituting into this case a party who does not assert infringement, and who will, in all
5  likelihood, be only a temporary owner of the patent, would be inefficient and a waste of the
6  parties' resources.

### 1.     Background law

"The very nature of Rule 25(c) vests a great deal of discretion in the hands of the court. It is not mandatory that a substitution be made in every case of a transfer of interest." *Panther Pumps & Equip. Co., Inc. v. Hydrocraft, Inc.*, 566 F.2d 8, 16 (7th Cir. 1977) (citing *McComb v. Row River Lumber Co.*, 177 F.2d 129 (9th Cir. 1949)). *See also Zest IP Holdings, LLC v. Implant Direct Mfg., LLC*, 10CV0541-GPC-WVG, 2013 WL 1626111, at *1 (S.D. Cal. Apr. 15, 2013) *reconsideration denied*, 10CV0541-GPC-WVG, 2013 WL 3779318 (S.D. Cal. July 17, 2013) (citing *In re Bernal*, 207 F.3d 595 (9th Cir. 2000); *McComb v. Row River Lumber Co.*, 177 F.2d 129 (9th Cir. 1949)) (Rule 25(c) motion "is addressed to the discretion of the court, taking into account all the exigencies of the situation").

In the Rule 25(c) context, personal jurisdiction over a potential party is imputed by its status as a successor in interest, without regard to minimum contacts. *Trend Micro I*, 2010 WL 4722504, at *4 (citing *Minn. Min. & Mfg. Co. v. Eco Chem, Inc.*, 757 F.2d 1256, 1262–64 (Fed. Cir. 1985)) ("It is true . . . that [Rule] 25(c) may allow an action to continue unabated when the substitution or joining of a party destroys . . . personal jurisdiction"); *Explosives Corp. of Am. v. Garlam Enterprises Corp.*, 817 F.2d 894, 906 (1st Cir. 1987) ("once *in personam* jurisdiction has been found over the original party, it exists over the substituted party *despite its lack of contacts with the forum* if the substituted party had an opportunity to challenge its joinder or substitution") (citing *Minn. Mining*, 757 F.2d at 1262–63) (emphasis added); *LiButti v. United States*, 178 F.3d 114, 123 (2d Cir. 1999) ("In several cases involving the question of whether a person could be substituted or joined under Rule 25(c), various courts have held that when a person is found to be a successor in interest, the court gains personal jurisdiction over them simply as a consequence of

their status as a successor in interest, *without regard to whether they had any other minimum contacts with the state.*") (citing cases) (emphasis added).

Successorship status is required to impute personal jurisdiction. *See LiButti*, 178 F.3d at 124 (denying substitution because, *inter alia*, non-party was not successor in interest). In the patent context, courts have found that an entity is a successor in interest when that entity has been assigned all of the rights in a patent. *See, e.g.*, *Trend Micro I*, 2010 WL 4722504, at *1, *5 (assuming without elaboration that assignee taking "right, title and interest in and to [a patent], including rights in and to any and all causes of action . . . for past, present, and future infringement . . . and the right to sue on all such causes of action" was sufficient to establish status as "current owner of the patent-in-suit"); *Hazeltine Corp. v. Kirkpatrick*, 165 F.2d 683, 684 (3d Cir. 1948) (assuming without elaboration that when party "transferred its interest and rights in all its patents," transferee was successor in Rule 25(c) context). Separately, an entity may also be a successor in interest if it is found to be a mere "continuation" of a party or some other jurisdiction-evading purpose exists. *See Minn. Mining*, 757 F.2d at 1262.

As to subject matter jurisdiction, Rule 25(c) does not change the constitutional requirement that an actual case or controversy must exist throughout a lawsuit. *Trend Micro I*, 2010 WL 4722504, at *3 (rejecting argument that Rule 25(c) obviates requirement of actual case or controversy).[1] Certain events—such as a transfer of interest—can divest the court of subject matter jurisdiction because the named party no longer holds an interest in the lawsuit. *Id.* (citing *King Pharm., Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1282–83 (Fed. Cir. 2010) (party's assignment of "all its interests" in patents-in-suit rendered action without case or controversy)). Rule 25(c) enables a court to restore subject matter jurisdiction by substituting into the action the non-party successor in interest, but only if a case or controversy exists between the successor and the remaining party. *See e.g.*, *Trend Micro I*, 2010 WL 4722504, at *4 (ordering additional discovery to determine whether actual controversy still existed between successor and remaining party, such that substitution would be appropriate); *Trend Micro II*, 2011 WL 499951, at *1 (after additional

---

[1] However, Rule 25(c) allows a successor to be substituted even where he may destroy diversity. *Trend Micro*, 2010 WL 4722504 at *4 (citing *Freeport–McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428–29 (1991)).

11

1  discovery, dismissing suit because no case or controversy existed between successor and
2  remaining party).

### 2. Discussion

As a preliminary matter, the Court rejects Mishcon's contention that Rule 25(c) only applies where the substitution is voluntary. *See Minn. Mining & Mfg.*, 757 F.2d at 1261–64 (affirming district court's grant of plaintiff's Rule 25(c) contested motion to add successor as defendant); *Explosives Corp.*, 817 F.2d at 904–907 (reversing district court's denial of plaintiff's Rule 25(c) motion to substitute successor as defendant). *See also* Cal. Prac. Guide Fed. Civ. Pro. Before Trial Ch. 7-G (explaining that "[o]pposing party may compel substitution").

The Court also rejects Mishcon's contention that Rule 25(c) requires an *alter ego* finding or other suspicious circumstance before it applies. *See, e.g.*, *Quinstreet Inc. v Parallel Networks, LLC*, Civ. No. 06-495-SLR, 2009 WL 1505610, at 3 (D. Del. May 28, 2009) (finding personal jurisdiction in Rule 25(c) context where successor was party to non-fraudulent transaction); *LiButti*, 178 F.3d at 123–24 (same). *See also* Fed. Prac. & Proc. Civ. § 1958 (3d ed.) (explaining that Rule 25(c) "applies to ordinary transfers and assignments").

As to personal jurisdiction, the Court would have personal jurisdiction over Mishcon in the Rule 25(c) context because Mishcon is a successor in interest to all of Reibman's rights in the '552 patent. Specifically, Reibman assigned to Mishcon "its entire right, title and interest in, to and under [the '552 patent] . . . including any and all past, present and future causes of action and other enforcement actions . . . in connection with, any and all past, present or future infringements or dilutions." *See* Bianco Decl. Ex. G; McGuire Decl. Ex. B; *Trend Micro I*, 2010 WL 4722504, at *1 (assuming without elaboration that similar assignment language was sufficient to establish status as successor in interest). Mishcon has not provided any meaningful argument or authority to support its assertion that it should be treated differently because it is a judgment creditor. Accordingly, Mishcon is a successor in interest to the '552 patent, which gives the Court personal jurisdiction, if Mishcon is substituted into the case under Rule 25(c).

As to subject matter jurisdiction, this requirement is also met because Mishcon, if substituted, would stand in the shoes of the plaintiff in the affirmative claim for patent

12

infringement against Renesas. *See Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 96 (1993) ("If . . . a party has actually been charged with infringement of the patent, there is, *necessarily*, a case or controversy adequate to support jurisdiction") (emphasis in original).

These conclusions, however, do not end the inquiry under Rule 25. The Court, having the *power* to grant a substitution, must determine whether, in its discretion, to *exercise* that power. In so doing, the Court considers "all the exigencies of the situation" in deciding how the lawsuit would be best conducted. *See Zest IP*, 2013 WL 1626111, at *1 (citing *In re Bernal*, 207 F.3d 595; *McComb*, 177 F.2d 129).

Although the Court would have subject matter jurisdiction if Mishcon were substituted as a plaintiff, the Court declines to substitute Mishcon in to prosecute such affirmative claims. Here, it is apparent that Mishcon has no current desire either to be a patent owner, or to be a plaintiff in an infringement suit. Mishcon acquired the '552 patent in an effort to collect its legal fees. In accordance with this goal, it immediately began the process of selling the patent, which continues to this day. *See* McGuire Decl. ¶ 21; Filardo Decl. ¶ 11. Mishcon has never, on its own behalf, accused Renesas of infringement, nor has it threatened to sue.

Were the Court to grant substitution, the parties would immediately continue what has already been an expensive and time-consuming lawsuit. Mishcon would be forced to defend the validity of the patent, and in that context may well feel compelled to prosecute the affirmative infringement claims forced upon it. In any event, it is clear that substitution would result in Mishcon expending a great deal of effort and expense—until the '552 patent is sold. At that point, the new holder may, or may not, decide that Renesas is the right target. The Court declines to put the parties through this wasteful exercise.[2]

Similarly, the Court declines to substitute Mishcon as a defendant in the counterclaims filed by Renesas. As to those claims, the Court is not persuaded by Renesas' arguments that Mishcon has demonstrated that it intends to prosecute any patent claims against Renseas, such that

---

[2] The Court is not unsympathetic to Renesas' position. Renesas has been forced to defend, at great expense, an infringement suit in California that it no doubt considers to be without merit. Nonetheless, the Court declines to, for that reason alone, cause the parties to embark on another wasteful exercise.

13

a case or controversy exists. First, Renesas points to various statements made by Mishcon, which purportedly indicate Mishcon's intent to sue. Specifically, Mishcon told the New York District Court that it needed time "to prepare for entering into the [instant action] . . . to limit any prejudice or adverse effect to the value of the [']552 [p]atent," that "[t]he patent is worth something today because of possible prospective value of what [it] . . . might bring . . . in the patent action," and that "it would be highly likely that the entity purchasing the patent would persist, albeit in a different action, in prosecuting the patent infringement case." Mot. at 7–8; Reply at 13. While these statements demonstrate that Mishcon understands that the monetary value of the patent ultimately lies in its litigation potential, this understanding is not equivalent to an intent to reap benefits itself from litigation directly. In fact, Mishcon has unequivocally stated that it does not wish to prosecute the action, and it has acted consistently by attempting to sell the patent. *See* McGuire Decl. ¶ 21. Although the patent was not sold at the November 21, 2013 auction, Mishcon has represented to the Court that it "is continuing its efforts to sell the '552 [p]atent privately." Filardo Decl. ¶ 11.

      Second, Renesas argues that Mishcon's refusal to provide a covenant not to sue indicates an actual controversy. Mot. at 7. Indeed, where dismissal for lack of subject jurisdiction is based on representations that an entity will not sue, courts have enunciated standards that Mishcon has not necessarily met. For example, one court refused to dismiss counterclaims based on a covenant not to sue as to the patents at issue in those counterclaims, explaining that, *inter alia*, the covenant was not broad enough. *Harris Corp. v. Fed. Express Corp.*, 670 F. Supp. 2d 1306, 1312 (M.D. Fla. 2009). However, that case is distinguishable because there, the infringement plaintiff attempted to gain a tactical advantage by depriving the court of subject matter jurisdiction as to the declaratory judgment counterclaims only, while still moving forward with the rest of its infringement claims. *See id.* at 1312–15. There is no evidence of a similar ploy here. Indeed, there is no evidence of any threat to sue. Further, as Renesas and Mishcon appear to agree, the value of the patent lies in its litigation potential. Thus, providing a covenant could decrease or eliminate the patent's value and would be inconsistent with Mishcon's efforts to sell it. *See* Opp'n to Suppl. at 8–9.

      Third, Renesas argues that ICAP's publication of the Infringement Analysis in connection

with the November 21, 2013 auction constitutes "an affirmative accusation of infringement against" Renesas and thus creates a case or controversy between it and Mishcon. *See* Suppl. at 2. Renesas relies on the analysis in *SanDisk*, 480 F.3d 1372. In that case, SanDisk Corp. ("SanDisk") brought a declaratory judgment action against STMicroelectronics, Inc. ("ST"). *See id.* Applying *MedImmune*'s "under all the circumstances" test, the Federal Circuit held that although ST had made a verbal assertion that it "absolutely" would not sue SanDisk, its other actions indicated "a preparedness and willingness to enforce its patent rights" and thus gave rise to a case or controversy. *Id.* at 1382–83. *See MedImmune*, 549 U.S. at 121. In its analysis, the court gave weight to the fact that ST sought a right to royalty under its patents based on "specific, identified activity" by SanDisk, while SanDisk asserted its right to proceed without paying royalties. *Id.* at 1382. Specifically, the court noted that during licensing negotiations, ST (1) presented a thorough infringement analysis by attorneys detailing how claims of its patents read onto SanDisk's products; (2) referred repeatedly to SanDisk's ongoing alleged infringement; (3) gave SanDisk voluminous materials documenting the alleged infringement; and (4) stated that it had made a "studied and determined infringement determination." *Id.*

Here, unlike the situation in *SanDisk*, Mishcon did not itself seek or produce the Infringement Analysis—it was produced by the previous plaintiff in this case, Grail. Moreover, ICAP, not Mishcon, posted the Infringement Analysis, and did so to assist in the sale of the patent. The analysis was included, without editorial comment from either ICAP or Mishcon, in a "data room" that included numerous other documents provided for due diligence purposes. This is hardly evidence of an intent to sue.

Finally, this case is analogous to *Trend Micro I* and *II*, which ultimately found a lack of case or controversy between a declaratory judgment plaintiff and the declaratory judgment defendant's successor, resulting in a dismissal of the case. *See Trend Micro I*, 2010 WL 4722504; *Trend Micro II*, 2011 WL 499951. In that case, the court found that the following facts were not sufficient to create an actual controversy between plaintiff Trend Micro Corporation ("Trend Micro") and successor Fortinet, Inc. ("Fortinet"): (1) the litigious historical relationship between Trend Micro and Fortinet, where past suits had all been initiated by Trend Micro; (2) the

15

possibility that defendant WhiteCell Software, Inc. ("WhiteCell") and Fortinet might establish a joint licensing entity; and (3) Trend Micro's belief that Fortinet would pressure WhiteCell to assert whatever rights it might still have in the patent. *Trend Micro II*, at *4–*5.

Here, Renesas, like Trend Micro, has failed to show facts that indicate a case or controversy between it and Mishcon. As discussed above, Mishcon's statements, Mishcon's refusal to provide a covenant not to sue, and ICAP's publication of the Infringement Analysis are not sufficient to give rise to a case or controversy. Additionally, as in *Trend Micro II*, there are no facts to establish that the transfers from Grail to Reibman to Mishcon were collusive or designed to intentionally divest the court of subject matter jurisdiction. *See Trend Micro II*, 2011 WL 499951, at *5.

Considering the facts in the record and the parties' representations under oath, the Court finds that substitution would not facilitate the conduct of this lawsuit. *See Zest IP*, 2013 WL 1626111, at *2 (court has discretion to "consider[] how the conduct of the lawsuit will be most facilitated") (citations omitted). The Court notes that it has considered Renesas' arguments regarding fairness and judicial efficiency. *See* Reply at 12 (arguments regarding fairness of exercising jurisdiction in Rule 19 context). However, the Court finds that it is better to dismiss the case without prejudice, in light of Mishcon's continuing efforts to sell the '552 patent.

### C.     Rule 15

Because the Court denies Renesas' Motion as to the joinder and substitution of Mishcon, Mishcon will not become a party. The plaintiff and counter-defendant, Reibman, no longer has any cognizable interest in the affirmative infringement claim because he has no interest in the patent. Moreover, there is no controversy between Renesas and Reibman with regard to the declaratory judgment counterclaims. Because Reibman has no interest in the patent-in-suit, the Court must dismiss the entire action for lack of subject matter jurisdiction. Accordingly, the Court DENIES Renesas' request to amend its answer and counterclaims as moot.

///

///

///

## IV. CONCLUSION

For the foregoing reasons, Renesas' Motion is DENIED. Because the Court lacks subject matter jurisdiction, this action shall be dismissed in its entirety without prejudice.

**IT IS SO ORDERED**.

Dated: January 7, 2014

_____
JOSEPH C. SPERO
United States Magistrate Judge